```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
ARGENTIC REAL ESTATE INVESTMENT 2 LLC,  :
                                        :
                      Plaintiff,        :
                                        :        25cv3134 (DLC)
           -v-                          :
                                        :        OPINION AND
SHMUEL HAIKINS, et al.,                 :            ORDER
                                        :
                      Defendants.       :
                                        :
--------------------------------------- X
```

APPEARANCES:

For plaintiff:

Julian Finer
William S. Gyves
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Zachary Aaron Stahl
Kelley Drye & Warren LLP
One Jefferson Road
2nd Floor
Parsippany, NJ 07054

For defendants Susan Hoffman, Baruch C. Maines, and Fred P.
Schwartz:

Yifat V. Schnur
Yifat V. Schnur Esquire LLC
22 Prescott Street
Edison, NJ 08817

For third-party defendants Spring Pref 1, LLC, and Joseph Treff:

Evan M Newman
Gabriel Steven Rosenberg
Jacobowitz Newman Tversky LLP
377 Pearsall Avenue, Suite C
Cedarhurst, NY 11516

DENISE COTE, District Judge:

Argentic Real Estate Investment 2 LLC ("Argentic") has sued five defendants for breach of a guaranty agreement ("Guaranty") they executed in connection with the plaintiff's loan to three companies affiliated with the defendants. Two of the defendants are in default. Three of the defendants, who are referred to as the Five Star Defendants, have answered and filed counterclaims. Argentic now brings a motion for judgment on the pleadings as to the Five Star Defendants' liability and to dismiss their counterclaims. Argentic seeks to recover from the guarantors costs associated with its enforcement of a pledge made with the loan. Argentic's motion to dismiss the counterclaims is granted; the motion for judgment on the pleadings is denied.

## Background

The following facts are taken from the complaint, the moving defendants' second amended answer and documents integral to those pleadings. They are undisputed unless otherwise noted.

On June 15, 2022, Argentic issued a loan in the amount of $17.3 million to three borrowers: Spring Lofts Crescent LLC, Spring Lofts BD LLC, and Five Star Spring Gardens LLC ("Borrowers"). The defendants are five individuals connected with the three Borrowers. Defendants Shmuel Haikins and Joseph Rubin ("Syndicator Defendants") indirectly held ownership

interests in the two Spring Lofts Borrowers and defendants Susan Hoffman, Baruch C. Maines, and Fred P. Schwartz ("Five Star Defendants") held interests in the third Borrower.  The loan relates to a joint investment between the Syndicator and Five Star Defendants in a residential property in Philadelphia, Pennsylvania ("Property").

The loan is evidenced by a Promissory Note and a Loan Agreement.  The loan is secured, in part, by an Open-Ended Mortgage, Assignment of Leases and Rents and Security Agreement ("Mortgage").  As a condition of Argentic's willingness to extend the loan, it also required the beneficial owners of the Borrowers to pledge their membership interests in the Borrowers as collateral ("Pledge Agreement").

Argentic also required that each of the five individual defendants execute a Guaranty, which provides in § 2(a) that "[e]ach Guarantor hereby irrevocably, absolutely and unconditionally guarantees to [Argentic] the full, prompt, and complete payment when due of the Guaranteed Obligations." Section 1(b) defines "Guaranteed Obligations" to mean "Borrowers' Recourse Liabilities," which are defined in § 10.1(r) of the Loan Agreement to include "any cost or expense incurred by [Argentic] in connection with the enforcement of its

rights and remedies hereunder or any other Loan Document." The Guaranty and the Pledge Agreement are "Loan Documents."

Section 5(a) of the Guarantee additionally provides:

> The obligations of Guarantors hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, a Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantors under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by [Argentic] or constitute a legal or equitable discharge or defense of a guarantor or surety.

(Emphasis supplied.) It further provides that Argentic "may enforce the obligations of any Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or deficiency action." As set forth in § 5(c) of the Guaranty, "each Guarantor hereby expressly and irrevocably waives all defenses in an action brought by [Argentic] to enforce this Guaranty based on claims of waiver release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise."

After three months of failed monthly debt service payments, Argentic accelerated the loan on or around November 20, 2023.[1] Pursuant to the Pledge Agreement and Article 8 of the Uniform Commercial Code ("UCC"), Argentic pursued a public sale of membership interests in the Borrowers on or around March 4, 2024, where it won the auction. The Notice of Sale for the auction required outside bidders to complete a number of prerequisites, including making a $250,000 deposit and indemnifying Argentic of any claim of misrepresentation. Argentic asserts that it incurred approximately $1.3 million dollars in expenses in connection with the auction. These include costs for transfer taxes, legal fees, auctioneer fees, title search fees, and UCC sale fees. The Notice established that the winning bidder would be responsible for the payment of all transfer taxes, which amounted to nearly $1 million.

On December 17, 2024, Argentic sent a demand letter to the five individual defendants for the payment of the costs associated with the sale of the Borrowers' membership interests. No such payment has been made.

Argentic filed a complaint for breach of contract and to enforce the Guaranty on April 15, 2025. A default has been

---

[1]  The loan has been the subject of four assignments between Argentic and AREIT 2 WH MS LLC, which assigned the loan and all associated documents back to Argentic on December 27, 2023.

entered against the Syndicator Defendants.  The Five Star Defendants answered with counterclaims against Argentic, crossclaims against the Syndicator Defendants, and third-party claims on May 27.  Argentic moved for partial judgment on the pleadings and to dismiss the counterclaims on June 25.  The Five Star Defendants were given an opportunity to amend their answer. The Five Star Defendants filed amended counterclaims on August 1 and an amended answer on August 6.  Argentic renewed its motion on August 26.  The Five Star Defendants filed a second amended answer on August 29 incorporating amended third-party claims. Argentic's motion became fully submitted on September 29.

## Discussion

Argentic moves for a judgment on the pleadings as to the defendants' liability under the Guaranty and to dismiss the counterclaims against it as contractually barred by the Guaranty.  The Five Star Defendants assert three counterclaims against Argentic: breach of implied covenant of good faith and fair dealing, recission of guaranty based on fraudulent inducement, and declaratory judgment of non-enforceability or limitation of guaranty.  Their 14 affirmative defenses include a defense of lack of commercial reasonableness.

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., courts "apply the same standard

as that applicable to a motion under Rule 12(b)(6)." Mantena v. Johnson, 809 F.3d 721, 727 (2d Cir. 2015) (citation omitted). "When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated by reference, and documents that . . . are integral to the complaint." Id. (citation omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

Under New York law,[2] guaranty agreements are to be construed according to "ordinary principles of contract construction." Cooperatieve Centrale Faiffeisen-Boerenleenbank, B.A v. Navarro, 25 N.Y.3d 485, 492 (2015) (citation omitted). A written

_____

[2] Section 9(a) of the Guaranty provides that it shall be governed and construed in accordance with New York law.

7

guaranty agreement "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" Id. at 493 (citation omitted). Although guaranty agreements are construed strictissimi juris, a guarantor "is not entitled to any particular tenderness in the interpretation of the language of his contract." Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 34 (2d Cir. 1999) (citation omitted). "Guaranties that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guaranties that are absolute and unconditional, have been consistently upheld by New York courts." Navarro, 25 N.Y.3d at 493 (citation omitted); see also Davimos v. Halle, 826 N.Y.S.2d 61, 62 (App. Div. 1st Dep't 2006) ("A guaranty must be construed in the strictest manner." (citation omitted)). A guarantor "cannot seek to benefit from the guarantor's own fraudulent promise that the guaranty is 'absolute and unconditional.'" Navarro, 25 N.Y.3d at 495.

Argentic is entitled to a dismissal of the Five Star Defendants' counterclaims. The Five Star Defendants do not deny that they executed the Guaranty and have failed to pay costs incurred by Argentic in connection with the auction. Nor do they dispute Argentic's interpretation of the terms of the

8

Guaranty.  By its unambiguous terms, the Guaranty is an "irrevocabl[e], absolute[] and unconditional[] guarantee" of payment of "Guaranteed Obligations," which include the expenses Argentic incurred in enforcing its rights under the Pledge Agreement.  The defendants' obligations under the Guaranty are "irrespective of" any "counterclaim" or "defense of a Guarantor."

The Five Star Defendants argue that their three counterclaims prevent enforcement of the Guaranty against them. They are wrong.  Under New York law, the Guaranty must be enforced according to its terms and the moving defendants cannot use any of the counterclaims they assert to escape liability. See Navarro, 25 N.Y.3d at 493 (claim of fraudulent inducement fails); see also Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 93 (1985) (defenses and counterclaims based on fraud barred by disclaimer in guaranty).

This well-established law is particularly apt here.  In the counterclaim for recission based on fraudulent inducement, the Five Star Defendants complain that Haikins deceived them and Argentic had a duty to confirm with them that they understood the terms of the Guaranty.  Argentic had no such duty under the law.  Moreover, the Five Star Defendants were in the best

position to protect their own interests in their dealings with their co-Borrowers and co-Guarantors.

The Five Star Defendants also argue that Argentic breached the duty of good faith and fair dealing in connection with the loan itself by allowing Haikins and Rubin to divert rental proceeds and default on the loan. These activities are relevant to the Mortgage and related documents that the Five Star Defendants did not sign. They are not properly asserted as a counterclaim to an action to enforce the Guaranty.

The third counterclaim is for a declaratory judgment that the Guaranty is unenforceable due to the activities that concern the first two counterclaims. For the reasons just explained, this counterclaim must also be dismissed. It is barred by the terms of the Guaranty and is also without merit.

The Five Star Defendants rely as well on a defense of commercial unreasonableness to argue that Argentic is not entitled to a judgment as to the Five Star Defendants' liability under the Guaranty and to collect the expenses it incurred in connection with the auction. They contend that Argentic structured the auction to suppress competitive bidding so that it would be the sole bidder and incurred excessive expenses, including nearly $1 million in transfer taxes.

10

Under Article 9 of the UCC, "a secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." N.Y. U.C.C. Law § 9-610(a). "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Id. § 9-610(b). New York courts have interpreted "commercially reasonable" to mean "that a qualifying disposition must be made in the good faith attempt to dispose of the collateral to the parties' mutual best advantage." Fed. Deposit Ins. Corp. v. Herald Square Fabrics Corp., 439 N.Y.S.2d 944, 954 (N.Y. App. Div. 2d Dept. 1981) (citation omitted). "It is the aggregate of circumstances in each case -- rather than specific details of the sale taken in isolation -- that should be emphasized in a review of the sale." In the Matter of Zsa Zsa Limited, 352 F. Supp. 665, 670 (S.D.N.Y. 1972), aff'd, 475 F.2d 1393 (2d Cir. 1973).

> A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> (1) in the usual manner on any recognized market;
>
> (2) at the price current in any recognized market at the time of the disposition; or
>
> (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

N.Y. U.C.C. Law § 9-627(b).    Further, "[i]f a security agreement covers both personal and real property, a secured party may proceed . . . as to both the personal property and the real property in accordance with the rights with respect to the real property" Id. § 9-604(a).

New York law sets out requirements for notices of sales of real property, which must occur at public auction.    See N.Y. Real Prop. Acts. Law § 231(1).    Such advertisements

> shall be given by the officer making it by publishing a notice of the time and place of the sale, containing a description of the property to be sold, in a newspaper published in the county in which the property is located . . . .    [P]ublication may be either once in each week for four successive weeks or at least twice in each week for three successive weeks preceding the original date fixed for the sale.

Id. § 231(2)(a).

In New York, "[t]he burden of proving the commercial reasonableness of every aspect of the disposition of the collateral is upon the plaintiff."    First Nat. Bank of Glens Falls v. G.F. Clear, Inc., 462 N.Y.S.2d 327, 329 (N.Y. App. Div. 3d Dept. 1983).    "[A] guarantor may not waive the defense of commercial reasonableness."    Bank of China v. Chan, 937 F.2d 780, 786 (2d Cir. 1991).

Argentic has not attempted to demonstrate in its motion that its sale of the membership interests in the Borrowers, which gave it ownership over the Property, was commercially

reasonable under the UCC and New York real property law. Because transfer taxes constituted the majority of the costs associated with the auction, a sale to a third-party bidder would have significantly reduced the liability of the Five Star Defendants under the Guaranty.  Argentic argues that the commercial unreasonableness defense does not shield the Five Star Defendants from liability under the Guaranty.  It contends that the defense would only affect the amount of damages that the plaintiff may recover at a damages inquest hearing.  Here, since Argentic only seeks to recover the costs it incurred through the auction, whether the auction was conducted in a commercially reasonable manner is a threshold issue. Accordingly, the parties will be given an opportunity to develop the record on the issue of commercial reasonableness and to address it in further briefing.

## Conclusion

The plaintiff's August 26, 2025, motion for partial judgment on the pleadings is denied; the motion to dismiss the counterclaims is granted.

Dated:     New York, New York
           December 19, 2025

_____
DENISE COTE
United States District Judge

13